THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE ALBOW, Appellant.

*Section* 527 *of the Penal Code — offering paper money for sale — the "green goods scheme."*

Section 527 of the Penal Code, which makes it a felony to circulate or distribute any letter offering for sale any counterfeit coin, paper money or what purports to be counterfeit coin, paper money or other token of value, whether called "green articles" or by any other name, etc., is not aimed solely at "counterfeit" paper money, but covers a nefarious business the persons engaged in which advertise for sale what purports to be good paper money. (PRATT, J., dissenting.)

An indictment, purporting to be drawn under section 527 of the Penal Code, *held* sufficient to support a conviction under that section, although it did not allege in terms that the act done had any relation to counterfeit coin or counterfeit paper money, but charged the defendant with assisting in "a scheme of offering or purporting to offer for sale and exchange green goods so called, being paper money or pretending so to be paper money," etc. (PRATT, J., dissenting.)

APPEAL by the defendant, George Albow, from a judgment of conviction of the Court of Sessions of Dutchess county, rendered on the 25th day of April, 1893, upon a verdict of guilty, on the trial of an indictment for assisting in what is known as the " green goods scheme," under section 527 of the Penal Code.

The indictment in question was as follows :

" The grand jury of Dutchess county, by this indictment, accuses George Albow of aiding, abetting and assisting in a scheme of offering or purporting to offer for sale and exchange green goods, so

called, being paper money, or pretending so to be paper money, by means of circular and letters and telegrams addressed and sent to one Ephraim Cassell at East Fork Post Office, in State of North Carolina, in the months of December, 1892, and January, 1893, and by which the said Ephraim Cassell and Ira Hogshead were induced to come to the city of Poughkeepsie, in the county of Dutchess and State of New York, to deal with him, said George Albow, therefor, and for that the said George Albow, on the 12th day of February, 1892, at the city of Poughkeepsie in this county, did state to one Ephraim Cassell, that he would take him, said Cassell, and one Hogshead then and there being to an old gentleman in the city of New York, who had one hundred thousand dollars of goods like a one dollar greenback so called, being a treasury note issued by the government of the United States of America, and then and there said Albow showed said Cassell said one dollar treasury note as aforesaid, when he, said Ephraim Cassell, could with said old gentleman exchange one hundred dollars of his, Cassell's, money for one thousand dollars of said old gentleman's money, which said Albow then and there said to said Cassell at said city of Poughkeepsie, on said 12th day of February, 1893, was as good as said one dollar bill which he, said Albow, showed to said Ephraim Cassell, and asked said Cassell to go with him at once to said city of New York, and also one Ira Hogshead to get the said money of the old gentleman, which said money said Albow called and designated as ' goods,' and which offer and statements by said George Albow were to carry out the scheme of selling or pretending to sell to said Cassell and said Hogshead ' paper money ' or ' goods,' or what was claimed to be such, contrary to section 527 of the Code of the Penal Code, and contrary to the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity."

*Daniel O'Connell* and *A. J. Rose*, for the appellant.

*Horace D. Hufcut, District Attorney*, for the respondent.

BARNARD, P. J.:

The section of the Penal Code under which this indictment is framed is not aimed solely at counterfeit paper money. The section

was designed to meet a nefarious business which may include counterfeit money, but the persons engaged in it were generally careful to advertise good money which would be sold at much less than the face value. The transaction sometimes resulted in a sudden snatching of the money of the proposed buyer and a flight with it by the seller or his agent. Sometimes the good money of the buyer was obtained by a package so made up as to represent a package of money, and before its examination the seller would disappear. The evil which the Legislature intended to prevent is shown in the present case. Someone writes a letter to one Cassell in South Carolina, under the name of Charles Mansfield, 283 St. Nicholas avenue, N. Y. This letter contains an offer to sell goods so that Cassell could make money. The price is stated to be $3,000 for $300, and larger sums for smaller prices. The place of meeting between buyer and seller was Poughkeepsie, N. Y., where the buyer was to register under an assumed name at a specified hotel there. Cassell was to send a message by telegram, and this telegraphic message was to be produced by the seller at Poughkeepsie. There was a long and artfully-prepared communication to the effect that by the neglect of the officials of the general government there was a fraudulent issue of government paper money. That it seemed to the writer of this communication that duplicate articles were in the possession of New York parties, and that the work of the government could not be detected from the work of " those people in New York." Cassell accepted, and was met in Poughkeepsie by the defendant at the place designated and admitted himself to be the proposed seller who had arranged the meeting. The indictment fairly tells this story. That the defendant, by means of circular letters addressed to Cassell, offered him paper money, or what was pretended to be paper money. That by means of this letter and circular and contents, Cassell was induced to come to Poughkeepsie to buy of George Albow, the defendant, money, or pretended money, and that there he showed a good $100 government bill and offered to take Cassell to New York to an old man who would sell to him bills like the one shown at the rate of $1,000 for $100 of Cassell's money. These bills he called goods.

By section 527 of the Penal Code, it is made a felony to aid or abet a scheme to defraud by means of circulars, offering for sale

paper money, informing anyone where it could be obtained. The statute in question is strictly followed in and by the indictment.

"A person who  \*  \*  \*  circulates or distributes  \*  \*  \* any letter  \*  \*  \*  offering  \*  \*  \*  for sale  \*  \*  \*  any counterfeit coin, paper money,  \*  \*  \*  or what purports to be counterfeit coin, paper money,  \*  \*  \*  or other token of value, whether called 'green articles,' 'queer coin,' 'paper goods,' 'bills' 'spurious treasury notes,' 'United States goods,' 'green paper goods,' 'business that is not legitimate,' 'cigars,' 'green cigars,' or by any other name or title, or any other device of a similar character, shall be guilty of a felony."

The telegraphic messages were properly received. The defendant, in his conversation with Cassell, admitted that he had sent them.

The conviction should, therefore, be affirmed.

DYKMAN, J., concurred.

PRATT, J. (dissenting) :

The conviction in this case must be justified, if at all, under section 527 of the Penal Code, which requires the following elements to constitute a crime : the printing, circulation or distribution of a letter, circular, card, pamphlet, handbill, or any other written or printed matter which shall offer, or purport to offer, for sale, exchange, or as a gift, *counterfeit* coin or paper money, or which shall give, or purport to give, information where *counterfeit* coin or paper money can be procured, with the intent to defraud, etc.

The indictment contains no allegation that the acts charged were with intent to defraud. It does not say that any act charged had any relation to *counterfeit* coin or *counterfeit* paper money. The nearest approach to a charge of anything counterfeit, is that the offer related to "green goods, so called, *being paper money*, or pretending so to be paper money,"  \*  \*  \*  that the goods were "like a one dollar greenback, so called, *being a treasury note* issued by the government of the United States," etc. The allegation seems to be that the stuff was money, "being paper money," being "a treasury note," etc. This is rather an allegation of the genuineness than the counterfeit character of the stuff.

We are sorry to feel forced to hold that this indictment did not charge a crime, for the evidence strongly tends to show that the

defendant ought to have been punished under the section in question.

We, therefore, reverse this conviction; but instead of discharging defendant, will order a new trial, thinking that perhaps something may yet be devised to promote justice in the premises.

Conviction affirmed.